**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JEFFREY PAUL O'BRIEN, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 06-cv-690 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

**I.   Introduction**

This action arises out of the devastating 1983 bombing of the U.S. Marine barracks in Beirut, Lebanon. The attack decimated the facility, killed 241 U.S. servicemen and left countless others wounded, and caused injuries to servicemen Jeffery Paul O'Brien and Daniel Lane Gaffney. The servicemen, joined by various family members, now bring suit against defendant Islamic Republic of Iran ("Iran"). Their action is brought pursuant to the state-sponsored exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 et seq., which was enacted as part of the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"). Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008). That provision, codified at 28 U.S.C. § 1605A, provides "a federal right of action against foreign states" that sponsor terrorist acts. *Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1, 4 (D.D.C. 2011) (quoting reference omitted).

**II.   Liability**

On July 2, 2010, this Court took judicial notice of the findings of fact and conclusions of law in *Peterson v. Islamic Republic of Iran*, which also concerns the Marine barracks bombing, and entered judgment in favor of the plaintiffs and against Iran with respect to all issues of liability. *See O'Brien v. Islamic Republic of Iran*, No. 06-cv-690 (D.D.C. July 2, 2010), ECF No. 30. This Court then referred this action to a special master for consideration of plaintiffs' claims for damages. *Id.* at 2. Since the issue of liability has been previously settled, this Court now turns to examine the damages recommended by the special master.

## II.     Damages

Damages available under the FSIA-created cause of action "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). Accordingly, those who survived the attack may recover damages for their pain and suffering, as well as any other economic losses caused by their injuries; estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 82–83 (D.D.C. 2010).

"To obtain damages against defendants in an FSIA action, the plaintiff must prove that the consequences of the defendants' conduct were 'reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with this [Circuit's] application of the American rule on damages.'" *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115–16 (D.D.C. 2005) (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003) (internal quotations omitted)). As discussed in *Peterson II*, plaintiffs have proven that the defendants' commission of acts of extrajudicial killing and provision of material support and resources for such killing was reasonably certain to—and indeed intended to—cause

injury to plaintiffs. *Peterson v. Islamic Republic of Iran (Peterson II)*, 515 F. Supp. 2d 25, 37 (2007)

The Court hereby ADOPTS, just as it did in *Peterson II*, *Valore*, and *Bland*, all facts found by and recommendations made by the special master relating to the damages suffered by all plaintiffs in this case. *Id.* at 52–53; *Valore*, 700 F. Supp. at 84–87; *Bland v. Islamic Republic of Iran*, No. 05-cv-2124 (D.D.C. Dec. 21, 2011), 2011 WL 6396527. However, if the special master has deviated from the damages framework that this Court has applied in previous cases, "those amounts shall be altered so as to conform with the respective award amounts set forth" in the framework. *Peterson II*, 515 F. Supp. 2d at 52–53. The final damages awarded to each plaintiff are contained in the table located within the separate Order and Judgment issued this date, and this Court discusses below any alterations it makes to the special master recommendations.

### A.     Pain and Suffering

Assessing appropriate damages for physical injury or mental disability can depend upon a myriad of factors, such as "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." *Peterson II*, 515 F. Supp. 2d at 25 n.26 (citing *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 59 (D.D.C. 2006)). In *Peterson II*, this Court adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages. *Id*. at 54. In applying this general approach, this Court has explained that it will "depart upward from this baseline to $7–$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries,

3

were rendered quadripeligic, partially lost vision and hearing, or were mistaken for dead," *Valore*, 700 F. Supp. 2d at 84, and will "depart downward to $2–$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire," *id*. When a victim suffers severe emotional injury without physical injury, this Court has typically awarded the victim $1.5 million. *Id.*

After reviewing the special master reports, the Court finds that the special master correctly applied the damages framework outlined in *Peterson* and *Valore*, and ADOPTS all of the special master awards for pain and suffering.

### B.    Solatium

This Court developed a standardized approach for FSIA intentional infliction of emotional distress, or solatium, claims in *Heiser v. Islamic Republic of Iran*, where it surveyed past awards in the context of deceased victims of terrorism to determine that, based on averages, "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F. Supp. 2d 229, 269 (2006). Relying upon the average awards, the *Heiser* Court articulated a framework in which spouses of deceased victims were awarded approximately $8 million, while parents received $5 million and siblings received $2.5 million. *Id*.; *see also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson II*, 515 F. Supp. 2d at 51). As this Court recently explained, in the context of distress resulting from injury to loved ones—rather than death—courts have applied a framework where "awards are 'valued at half of the awards to family members of the deceased'—$4 million, $2.5 million and $1.25 million to spouses, parents, and siblings, respectively." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 n.10 (D.D.C.

2011) (quoting *Valore*, 700 F. Supp. 2d at 85); *see also Bland*, 2011 WL 6396527, at *4–5. Children of a deceased victim typically receive an award of $3 million, while children of a surviving victim receive $1.5 million. *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003); *Bland*, 2011 WL 6396527, at *4; *Anderson v. Islamic Republic of Iran*, No. 08-cv-535 (D.D.C. Mar. 20, 2012), 2012 WL 928256, at *2.

This Court further developed the *Heiser* framework in *Bland*, where it considered whether family members could receive solatium awards that were greater than the pain and suffering awards of the surviving servicemen. *Bland*, 2011 WL 6396527, at *4–5. In *Bland*, a serviceman who suffered severe emotional injury but no physical injury received a $1.5 million award for pain and suffering. *Id.* at *10. This Court held that it was inappropriate for family members to receive a larger solatium award than the injured serviceman's award, and therefore the Court proportionally reduced the wife's solatium award to $1 million and the children's solatium awards to $750,000. *Id.* In applying this framework, however, courts must be wary that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (2010), and that deviations may be warranted when, *inter alia*, "evidence establish[es] an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship; medical proof of severe pain, grief or suffering on behalf of the claimant [is presented]; and circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27.

In this case, the injured servicemen—Jeffrey O'Brien and Daniel Lane Gaffney—both receive $1.5 million pain and suffering awards. The special master, following *Bland*, recommends proportional reductions in the family members' solatium awards to $750,000 for

the victims' parents and to $500,000 for victims' the siblings. *See* Report of Special Master Concerning Count I and III [ECF No. 37], at 13–16; Report of Special Master Concerning Count II and IV [ECF No. 38], at 15–18. In order to maintain a rough proportionality with the *Heiser* framework as modified by *Bland*, the Court will increase the parents' awards to $850,000 but otherwise ADOPTS the recommended solatium awards.

One plaintiff merits further discussion. The special master recommended a reduced award of $250,000 for Peter Gaffney, brother of serviceman Daniel Lane Gaffney. Supplemental Report of Special Master Concerning Counts II and IV [ECF No. 40]. Peter was "sure that I would have been very worried for [Daniel]. . . I just don't really remember all of that." *Id.* at 4. The special master found that Peter "shared no experiences growing up with Daniel and, due to personal afflictions and the estrangement from his family, was unable to provide anything other than speculative information as to what Daniel endured, how the bombing impacted Daniel or what, if any, impact Peter felt as a result of the October 23 bombing." *Id.* at 7. In light of Peter's estrangement with his family and his inability to recall suffering emotional distress after the bombing, the Court finds that Peter should not receive a solatium award.

### C. Punitive Damages

In assessing punitive damages, this Court has observed that any award must balance the concern that "[r]ecurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect . . . .," *Murphy*, 740 F. Supp. 2d at 81, against the need to continue to deter "the brutal actions of defendants in planning, supporting and aiding the execution of [terrorist attacks]," *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 184 (D.D.C. 2010). To accomplish this goal, this Court—relying on the Supreme Court's opinion in *Philip Morris USA*

*v. Williams*, 549 U.S. 346 (2007)—held that the calculation of punitive damages in subsequent related actions should be directly tied to the ratio of punitive to compensatory damages set forth in earlier cases. *Murphy*, 740 F. Supp. 2d at 81–82. Thus, in *Murphy* this Court applied the ratio of $3.44 established in *Valore*—an earlier FSIA case arising out of the Beirut bombing. *Id.* at 82-83 (citing *Valore*, 700 F. Supp. 2d at 52); *see also Bland*, 2011 WL 6396527, at *6. Here, the Court will again apply this same $3.44 ratio, which has been established as the standard ratio applicable to cases arising out of the Beirut bombing. Application of this ratio results in a total punitive damages award of $34,572,000.

### III.   MISCELLANEOUS

Plaintiffs move to vacate this Court's Order of August 9, 2011. *See* ECF No. 39. In that Order [ECF No. 36], the Court dismissed plaintiff Margaret O'Brien because counsel failed to timely submit all materials necessary for the special master to complete his reports. Order of Aug. 9, 2012, at 2. Mrs. O'Brien passed away on April 25, 2006. *See* Ex. 2 [ECF No. 39-1]. By August 1, 2011, this Court's deadline—and more than five years and four months after her death—the proper paperwork had still not been received by the special master. The Court will not allow this last-minute motion to prevail because excusing such a delay would set a dangerous precedent for future cases. Further, Mrs. O'Brien's estate has been included as a plaintiff in the recently filed *Spencer v. Islamic Republic of Iran*, so her estate is not left remediless. Therefore, plaintiff's motion to vacate [ECF No. 39] is hereby DENIED.

### IV.   CONCLUSION

In closing, the Court applauds plaintiffs' persistent efforts to hold Iran accountable for its cowardly support of terrorism. The Court concludes that defendant Iran must be punished to the fullest extent legally possible for the bombing in Beirut on October 23, 1983. This horrific act

impacted countless individuals and their families, a number of whom receive awards in this lawsuit.  This Court hopes that the victims and their families may find some measure of solace from this Court's final judgment.  For the reasons set forth above, the Court finds that defendant is responsible for plaintiffs' injuries and thus liable under the FSIA's state-sponsored terrorism exception for $10,050,000 in compensatory damages and $34,572,000 in punitive damages, for a total award of $44,622,000.

A separate Order and Judgment consistent with these findings shall be entered this date.

SO ORDERED.

Signed by Chief Judge Royce C. Lamberth on March 28, 2012.